May it please the court? Mr. Smith, we'll hear from you first. You may proceed. Thank you, your honor. May it please the court, opposing counsel, thank you for giving me the opportunity to argue today. This case involves some, I think, for lack of a better word, shenanigans by the government, the administrative process, and I think that those happened because of a statute that has been misconstrued by DHS, the immigration judges, and the BIA for a long time. So what we're going to ask the court to do is to correct some of those shenanigans that happened so that Ms. Herrera can receive due process as well as construe the statute and correctly so that it doesn't happen that way anymore. I think some factual background is helpful in this case. Ms. Herrera obtained her lawful permanent residence through fraud. She admitted to it, but guilty to the crime of obtaining it through fraud. Everyone, I think, here would admit that she obtained it fraudulently. And so after she went through her criminal proceedings, she got placed into immigration proceedings and charges were movable because she obtained her lawful permanent residence through fraud. Now, after that happened, the immigration judge sustained it, and Ms. Herrera made it clear that she was going to seek a waiver of that fraud. And if she obtained the waiver of that fraud, then she was going to become a lawful permanent resident if the attorney jail granted it. And DHS realized this, attempted to add in another reason she was removable, which was her conviction of two crimes involving oral interpreting. But they didn't quite realize that that wasn't going to be enough because she would still be eligible for cancellation of removal as a lawful permanent resident if she waived the fraud. So really what they needed to have happen was for this entire fraud situation to disappear. And so on the day of trial, they tried to make that happen, tried to withdraw and say to the IJ, the designee of the attorney general, well, we aren't bringing that anymore, and so you can't have it anymore, which completely obviously messed with Ms. Herrera's case and her arguments. Counsel, are you saying that at any time during the proceedings does not include the day of trial? I don't think that any time the proceedings means that you can withdraw anything. I also don't mean it means that you can withdraw after it's been sustained by the immigration judge. I think that withdrawing on the day of trial does mess with the due process right to a fair hearing, yes. And more than that, it just kind of, I think, undermines what the statute that the legislature has written, the Congress has written, the Immigration and Nationality Act. And 237A1H, if you read it, says the attorney general gets to decide whether to waive fraud. It's in the case of Ms. Herrera, can't really make an appointment with William Barr asking him to waive her fraud. That would not be conceivable. There's too many immigration cases. So what the attorney general has done is he says, okay, well, I'm chief immigration judge, but there are going to be many other immigration judges throughout the country. And in the Code of Federal Regulations, he then delegates some of his authority on those cases to the immigration judges. So the immigration judge is acting as the attorney general. And so what DHS was saying was, well, the attorney general doesn't have the option to waive the fraud anymore because DHS isn't bringing that charge anymore. That's not how the statute reads. The statute doesn't say that the attorney general can waive the fraud if DHS agrees or if DHS consents, or if DHS and the attorney general can waive the fraud. There's no requirement that DHS be on board with it. And the attorney general doesn't have to take DHS's opinion into account, but ultimately, he doesn't have to care whether they like the decision or not. And so by saying that they needed to have that specific charge and needed to be in there, it's directly in contravention with the statute and what Congress is intent to grant the attorney general this broad discretion. And you can see that this misreading of the statute, that first DHS needs to have the charge and it needs to be in there, that that's kind of what led to all of these weird mess-ups that the court has. And so all of a sudden, of course, we mentioned withdrawing the charge on the day of on both them bringing the charge of removability, as in formally charging it in a notice to appear, but also with the court also accepting the factual matter, which is that she was, she did obtain her lawful permanent residence through fraud. And it needed to rely on both both of this legal fiction that she was no longer being charged as removable because of fraud, but also the legal facts that she did obtain her lawful permanent residence through fraud. Why is it a fiction that she was no longer being charged with removability for fraud? Okay, well, maybe I've said that wrong. I guess, well, if in certain circumstances, she was no longer being charged as being removable or being fraudulent, like that charge does exist. But I'm saying those two things can't really exist at the same time. Like she got her lawful permanent residence through fraud, whether DHS is bringing the charge or not really doesn't affect the statute about whether it can be waived. Whether what can be waived? Whether her fraud can be waived, sorry. Well, what does the statute actually say? 237A1H, I can't bring it up. It says, the provisions of this chapter relate to the removal of aliens within the United States on the ground that they were inadmissible at the time of admission as aliens. Described in the section 1182AC61 of this title, whether willful or innocent, may in the discretion of the Attorney General be waived for any alien. And then it discusses the various scenarios in which the Attorney General may waive that fraud. He's not actually waiving fraud, he's waiving provisions of the paragraph relating to the removal of aliens on the ground that they were inadmissible. Well, the amount of fraud was what made her inadmissible. But the provisions of the paragraphs relating to removal of a person who does that don't apply if the government's not trying to remove them on that basis. Isn't that the crux of the problem here? No, the statute doesn't say that the government needs to be trying to remove them on that basis. It just needs to be that they're inadmissible on that basis. So they're inadmissible on that basis factually. It refers to the provisions of this paragraph relating to the removal of aliens. Doesn't that mean that there has to be an effort to remove the alien on this ground before the waiver provision is applicable? No, I don't think so. I think that the aliens inadmissible as a factual matter, whether they're being charged with that specific portion or not. And so whether they're in proceedings or not, I think the Attorney General can waive inadmissibility. And even if it was the case that it was directly tied to that, in this case, Ms. Herrera was already in those proceedings. The immigration judge had already sustained proceedings, had already sustained that charge. And so she was already locked in, in this case, that that issue had already been decided. At any time, it certainly can't mean after the case is over or after the issue has already been decided. I mean, could they remove the charge today or after someone has been granted the waiver? I don't think that would apply after the Attorney General agrees, like, okay, yes, you're trying to remove this alien. I'm going to sustain that charge. And so we're going to do that. Essentially, it attempts to rob the Attorney General of that power that the statute gives them of waiving that fraud by saying, well, it's directly tied to these charging decisions. And so DHS now gets to decide whether they're being removed or not. They're both part of the executive branch. Correct, but... I'm going to leave the President could say, I want this person removed, so I'm just going to proceed as DHS did here. The President didn't take a look at this one, but the statute says Attorney General. It doesn't say Department of Homeland Security. There's other sections of the code that give them all the discretion that the DHS has, all the discretion that the Attorney General has. And in this case, this is where the Attorney General has their discretion, has their power, is whether to grant that waiver. It doesn't rely on the Department of Homeland Security agreeing. With that, I'm going to reserve five minutes of my time. Thank you. You may, very well. Thank you for your argument. Ms. Waiteka, we'll hear from you. May it please the Court, I am the Network Technical Representative and the Respondent. I think it's helpful just to summarize that Ms. Herrera's removability is not an issue. She has not challenged the determination that she's removable for crimes involving moral pursuit. And so what she's trying to do, can you hear me? Your audio is very muffled. I'll try to sit a little closer to the microphone. Is that better? No, the sound is distorted. Ms. Waiteka, the IT is recommending that you end your call and join the conference again. Okay, I will hang up. Please stop the clock. Judge Colleton, this is Jeanette in the courtroom. Yes. The IT Department is recommending if she comes back in with static, she needs to mute her mic and call in the telephone number to continue argument because the DOJs are using the web version. All right, have the phone number ready right away so you can read it to her if she needs it. Yes, sir. Okay. Well, she hasn't come back. You think she needs another invitation? I will forward it now. Okay. There we go. She's popped up. Why don't you see if she's there, Madam Clerk? Ms. Waiteka? There she is. Okay, I thought I would call in. Can you hear me now? Yes, we can hear you now. It sounds better than before. Why don't we proceed and if it doesn't work, then we will ask you to turn off the microphone and call in. We will try it by video first. Please proceed. Okay. Thank you. So in order to avoid being removed, Ms. Herrera wanted to apply for cancellation of removal, but as things stand, she's not eligible to apply for that. The clerk is going to read you a telephone number, and you can leave the video on if you wish, but we would ask you to call in and speak over the phone. Ms. Waiteka, this is Jeanette. It's 202-503-1666, and then I'm going to read you an ID number you'll need. 202-503-943. Is it asking for it again, the PIN? Are you ready? 890-730-943. Pound. Okay. Can you hear me? Yes, we can hear you without distortion now. There was a little feedback, but let's try this. Please be sure your microphone is off on the computer so we don't get double. Okay. Yes, I've done that, and I've turned down my speakers as well. Okay. It sounds much better now, so please proceed. Good. Thank you, Your Honor. So she's not eligible for cancellation as things stand now because she admits that she obtained her permanent residence status by fraud, and the first requirement for cancellation of removal for non-permanent residence is that the person has to be lawfully admitted for permanent residence, and that requires more than just procedural regularity. It requires compliance with the substantive legal requirements of the statute, and inasmuch as she doesn't contest that she lied and falsely claimed that she was married to a United States citizen when she filed her application for adjustment of status, she can't make that showing, and it's her burden to show that she meets all of the statutory requirements, and so this is the importance of the waiver under Section 1227A1H to Ms. Herrera's case. So that statute provides for a waiver of a ground of removability in Section 1227A1 for aliens who were inadmissible at the time of admission if on the basis of fraud described in Section 1182A6CI, and so the reason that Ms. Herrera is complaining is that she was initially charged with a ground of removability in Section 1227A1A, an alien who was inadmissible at the time of admission, which would have made her eligible to seek this waiver that waived not only the ground of removability, but it waived the underlying fraud, and so although she was initially charged under the statutory provision, DHS withdrew the withdrawing the ground of removability is that she can't fix the problem of the fraud that she committed in getting her permanent residence status, her fraud that she committed in the process of being admitted. So she can't... Let me ask you a question, if I could. Did the So there's a... In the transcript, so the DHS attorney stated a couple of times that the charge under A1A had not been sustained, but what I noticed in my preparation for the argument is that on page 89 of the administrative record, the judge states, I am going to find removability under 1237A1A. That was on November 8th, and so the judge never uses the word sustained in the transcript, but in the decision, the judge states that the charge was sustained and then withdrawn. Would it make any difference to our analysis one way or the other? It does not, because the regulations provide that DHS has discretion to file new or substitute charges any time during the removal proceeding. So in the regulation under ACFR 1003.30, there's no limit to the time for when DHS can withdraw a charge or substitute a charge or add an additional charge. The regulation just states at any time during deportation or removal proceedings. So there's no authority for the petitioner's assertion that once a charge is sustained, it can't be withdrawn. So and then just to clarify about the waiver under section A1H, what the language of A1H says is the provisions of this paragraph relating to the removal of aliens. I think what my brother counsel said was the provisions of this chapter, and that's not quite what the statute says. So the statute relates specifically to this paragraph relating to removal, and it's removal grounds under A1. And as it stands right now, there is no ground of removability under section A1. And so essentially there's nothing for the waiver to waive. It's not a freestanding waiver that waives any fraud in an alien's immigration history. It's specifically tied to a ground of removability that Ms. Herrera does not face anymore. So her argument that the attorney general can still waive fraud generally is not correct. There has to be the immigration judge is acting as the attorney general's delegate, and there has to be a specific authority for granting a fraud waiver. And with the charge of removability under section 1227A1A removed, there's no longer anything for the waiver to waive. So is it a shenanigan for the government? Well, I understand why she feels that way. I think that we see things differently. We see this as zealous representation. It is an adversarial proceeding, and DHS is charged with enforcing the immigration laws. And in that capacity, it's made a determination that Ms. Herrera should be removed. And so in connection with its pursuit of its determination that it's not in the interest of the United States for Ms. Herrera to remain, it has done a tactical thing that deprived her of a ground of relief that she thought she was going to have. So I don't think it's a shenanigan. It's just zealous advocacy on the part of DHS. So would the A1H waiver also apply to the removability for crimes involving moral turpitude? No. No, Your Honor, it would not. And that is because the waiver in A1H is tied specifically to 1227A1 and the crime of moral... And what's the strategy? What's the advantage that's gained by doing that? By... I'm sorry, I don't understand what... By abandoning the fraud ground for removability, which eliminates the A1H waiver. Yes. So the strategy is to eliminate Ms. Herrera's opportunity to apply for cancellation by fixing the historical fraud in her immigration history. So if she can't fix the fraud at the time of her who is lawfully admitted for permanent residence. She may have a green card, but she didn't obtain that by complying with the substantive requirements of Section 1229, or with the substantive requirements of gaining permanent residence status. It's a force. She has permanent residence status in form, but not in substance. And the substance is what controls whether... Why does a waiver under subsection H, which says that the provisions of the paragraph relating to removal may be waived, why does that resonate? So in the language at the underneath subsection little I, where it says is a VAWA self-petitioner... Your Honor, are you looking at the statutory language? Yes. Okay. Under that, it says a waiver of removal for fraud or misrepresentation granted under this subparagraph shall also operate to waive removal based on grounds of admissibility directly resulting from such fraud or misrepresentation. So it waives... So the waiver waives the original fraud. It doesn't say that. It says it waives removal based on that admissibility. So I thought maybe you could read it to say it waives the ability to remove her on those grounds, but why does it change her status? There are cases that we've cited that I'm trying to put my hands on. Well, if they're in your brief, we'll find them. I mean... Tima, I think, is cited in our brief. And matter of Sosa Hernandez, I think, lays out it's the predecessor to 1227A1A, but those cases state that... Oh, I'm sorry. And also a Ninth Circuit case which we did cite, Vasquez v. Holder, also in connection with the predecessor of 1227, the effect of the fraud waiver statute is to transform an individual who enters the United States. That's not quite on point, but that is what the fraud waiver does. Well, why? That's my question. I mean, everybody, you're saying that and Mr. Smith is saying that, but I'm trying to get that out of the statutory language. The part you pointed to says it operates to waive removal based on... Oh, I see. Yes. Query why its effect is limited to waiving the ability to remove the person without changing status and making her eligible for cancellation. Well, I think maybe the answer is that the ground of removability is based on she's removable under 1227A1A because she was invisible at the time that she was admitted, and so waiving the removal ground would also waive the underlying fraud. Well, you have a minute remaining if you'd like to argue other points. I don't think I have anything else. I just request then that if there's no more questions that the petition for review be denied. So would you like me to hang up then at this point? You may stay on the line. You may stay on the line. Maybe if there's a mute button on the phone or just keep it quiet. Mr. Smith. I'll hear from you in rebuttal. Thank you, Your Honor. Yes. The reason that Ms. Herrera wanted the waiver was so that she become a lawful permanent resident. Then once she is, even if the crime, even if she has committed two crimes involving Walter Pertut, she's still eligible for cancellation of removal. And the reason that DHS wanted to withdraw it was because they didn't even want her to give her the opportunity to ask the Attorney General for the opportunity to waive that fraud. It really does show quite an animus towards Ms. Herrera beyond just enforcement of our immigration laws. Although Ms. Herrera would agree that we do have an adversarial system, especially in integration courts. But it's important that DHS is also held to those same standards of an adversarial system. There is authority for the charge sustained can't be withdrawn. Ms. Herrera is required to plead to the charges. So she's required to plead or she's required to admit them or she's required to deny them. If she admits them, she can't take them back. That same standard needs to apply to DHS in these proceedings. And regarding the statute, it says in the removal of aliens, she was in removal proceedings. I think it's the easiest way to read that is that she was in these removal proceedings. And so in the removal proceedings, she was able to apply for a fraud waiver as opposed to apply for a waiver for fraud at USCIS or some other immigration authority. And in addition, her removal was based upon that fraud. You can't separate out the fraud factually from this proceedings as a charge. These proceedings came about because of the fraud. That's why she got attacked. That's what the initial notice to appear was. You can have those charging decisions, but the fact of the matter is always that she committed that fraud and that's what led to these removal proceedings. So, yeah, it's definitely about that. Smith. Yes. Smith, yes. Would you like to take... What's your best authority that a waiver under subsection H, which also operates to waive removal based on the grounds of inadmissibility means that her status is converted? That would probably be almost the same as Ms. White-Chavez. I don't even think the parties really disagree about that. That's how the BIA has been running it. That's how some of the circuit courts have been doing it. That's kind of how the parties assumed the statute worked in this case. Right. My question is, what's the best authority for that if we wanted to read up on it? Oh, okay. Yeah, I think there's a Ninth Circuit case that I've cited to in my brief. So I think the circuit cases are probably the best. And then TEMA in the BIA is a good case that kind of and then waives the underlying fraud to make her a lawful permanent resident. All right. Thank you. Yes. Sorry, I'm just reading my notes here. I don't have anything further unless there's any further questions. I know that lawful permanent resident waiver is a little tricky. So if I can help the court out at all, but otherwise I think I'm finished. Thank you. Very well. Thank you for your argument. Thank you to both counsel. We appreciate your appearing by video conference and working through the technology issues. The case is submitted and the court will file an opinion in due course.